*953 TEXTO COMPLETO DE LA SENTENCIA
Telehealth Service Inc., et al. (Telehealth) comparece ante este Tribunal solicitando que revoquemos la sentencia emitida, el 30 de junio de 2008, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En el referido dictamen, el tribunal a quo declaró con lugar la sentencia declaratoria presentada por el HIMA San Pablo Properties, Inc. (HIMA).
HIMA, por su parte, presentó su correspondiente alegato, en el que se opuso a las alegaciones presentadas por Telehealth en su recurso apelativo.
Con el beneficio de la comparecencia de ambas partes; procedemos a resolver.
I
Por ser un pleito accidentado con varios trámites procesales, pasamos a detallar minuciosamente los hechos para una mejor comprensión de las controversias aquí planteadas.
El 4 de junio de 2003 y el 1 de julio de 2003, UHS of Puerto Rico, Inc. (UHS) y Telehealth otorgaron contratos de concesión, donde el primero se obligó a instalar televisores a color en las habitaciones de los Hospitales San Pablo del Este y San Pablo de Bayamón.
Las partes acordaron que el contrato con el Hospital San Pablo del Este sería por un término de 5 años, contados a partir del 1 de junio de 2003, renovable 2 años adicionales. El término del contrato con San Pablo de Bayamón sería de 5 años, a partir del 1 de julio de 2003, renovable 2 años adicionales.
Para el 4 de febrero de 2005, HIMA suscribió contrato con UHS donde adquirió los activos de dicha compañía. Para el 21 de abril de 2005 HIMA le notificó a Telehealth que como ésta sólo adquirió los activos de UHS, éste no asumió las deudas u obligaciones que tenía dicha compañía. Por lo tanto, le informó que resolvía el contrato.
Telehealth, por su parte, contestó a HIMA expresándole que el contrato suscrito vencía el 1 de mayo de 2010. No obstante, el 1 de julio de 2005, HIMA le requirió a Telehealth la remoción de su equipo de las facilidades de los hospitales.
Siendo así, el 22 de julio de 2005, Telehealth presentó demanda contra HIMA y solicitud de interdicto provisional.
*954 Por acuerdo entre las parte, el TPI concedió el interdicto provisional. Posteriormente, el TPI desestimó la causa de acción de Telehealth al considerar una moción presentada por HIMA.
Inconforme con la anterior determinación, Telehealth recurrió ante este foro. En aquella ocasión, un panel hermano confirmó la decisión arribada por el TPI en cuanto a una de las partes demandantes (ASA Catering, Inc.). No obstante, revocó la determinación en cuanto a Telehealth y en lo que aquí respecta dispuso lo siguiente:

“De una lectura de la cláusula contractual antes citada, podemos colegir que el Grupo HIMA asumió todos los compromisos, contratos, arrendamientos, órdenes de compra y acuerdos que estuvieran vigentes en relación a los hospitales propiedad de UHS.

En cuanto al apelante Telehealth, no procedía la desestimación mediante sentencia sumaria, pues el TPI debió celebrar una audiencia para dirimir las controversias sustanciales de hechos.

Los dos contratos titulados Contratos de Servicios de Televisores otorgados entre UHS y Telehealth, ..., no contienen una cláusula resolutoria unilateral. Al examinar ambos contratos de Telehealth encontramos que la única cláusula en la que las partes pactaron la forma y manera de resolver dichos contratos fue la vigésima primera. Allí se dispuso lo siguiente:

Vigésimo primero: En caso de incumplimiento por la concesionaria con cualquiera de las disposiciones de este contrato, el concedente notificará por correo certificado con acuse de recibo sobre el incumplimiento y tendrá la concesionaria sesenta (60) para corregir la falta o incumplimiento, luego de lo cual, de no haberse corregido, estará en libertad el concedente para declarar vencido el presente contrato, quedando en libertad para contratar los servicios aquí contratados con cualquier persona o entidad de su elección.

Lo anterior no puede ser considerado como una cláusula resolutoria unilateral, pues requiere actuaciones de ambas partes antes de poder resolver los contratos. ...

Ninguna de las partes puede, unilateralmente, dar por terminado el contrato. En consecuencia, la carta enviada a esos efectos por el Grupo HIMA a Telehealth dando por terminado los dos contratos no tuvo el efecto de resolver los mismos de acuerdo a las cláusulas contractuales vigentes. En la mencionada carta, no se le apercibe a Telehealth de ninguna falla o incumplimiento, meramente se le informa que a partir del 31 de julio de 2005 se daban por terminados sus contratos.

Se ordena la devolución del caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo ordenado. ”

Insatisfecha aún, ASA Catering Inc. recurrió ante el Tribunal Supremo de Puerto Rico, sin embargo, este no expidió el auto de certiorari. Por lo tanto, la sentencia del Tribunal de Apelaciones se convirtió en final y firme.
Ante el dictamen del Tribunal de Apelaciones, los procedimientos en el TPI continuaron en relación a las controversias existentes entre Telehealth e HIMA.
Como consecuencia de una serie de comunicaciones escritas entre Telehealth e HIMA, en relación a la renovación de los contratos por el término de dos años adicionales, este último solicitó enmendar la reconvención en cuanto a la sentencia declaratoria para que el TPI resolviera lo siguiente: si, conforme al contrato suscrito, Telehealth puede unilateralmente renovar o no ejercer la prórroga provista en ambos contratos. Además, solicitó desistir de la reclamación en daños por alegado incumplimiento contractual, y que como los contratos se mantendrían en vigor hasta su vencimiento natural, se dictara sentencia parcial para desestimar la demanda por tornarse ésta académica.
*955 Las peticiones de HIMA fueron objeto de oposición por parte de Telehealth. Éstos alegaron que no procedía la enmienda a la reconvención por ésta constituir una opinión consultiva y prematura lo que la convertía en una controversia no justiciable.
Ante las múltiples mociones, el TPI ordenó a Telehealth que se expresara en relación a la solicitud de desistimiento sin perjuicio de la reconvención y de la solicitud de desestimación de la demanda.
Sobre lo anterior, el TPI emitió resolución el 4 de marzo de 2008. Surge del expediente que ésta fue notificada el 1 de abril de 2008. Mediante dicho dictamen, el foro de instancia aceptó la enmienda a la reconvención que solicitaba que se resolviera mediante sentencia declaratoria si Telehealth tenía autoridad para unilateralmente decidir renovar o no ejercer la prorroga, de los dos años adicionales, concedida por ambos contratos. Además, para el 12 de mayo de 2008, el TPI dictó sentencia parcial, en la que concedió el desistimiento sin perjuicio de la causa de acción de daños por alegado incumplimiento contractual, siendo notificada el 20 de mayo de 2008.
Es de señalar que luego, HIMA solicitó que se dictara sentencia sumaria a su favor por ser los términos del contrato claros en cuanto a la necesidad de su anuencia para la prórroga del contrato por 2 años adicionales.
El 18 de junio de 2008, Telehealth solicitó relevo de la Resolución del 4 de marzo de 2008 y de la Sentencia Parcial del 12 de mayo del 2008. Adujo que tanto la sentencia parcial como la resolución emitida van en contravención de lo decidido por el Tribunal de Apelaciones, ya que alegadamente el efecto que tuvo el dictamen de dicho foro fue desestimar la reconvención original; que no es correcto que la incomparecencia de éste se pudiera entender o interpretar a los efectos de un allanamiento al desistimiento sin perjuicio, y que el TPI le violó el debido proceso de ley al prejuzgar el resultado del caso cuando interpretó la cláusula aludida por HIMA antes de aceptar la enmienda a la reconvención.
Días después, Telehealth replicó a la solicitud de sentencia sumaria que presentara HIMA. Con el beneficio de la comparecencia de las partes, el TPI emitió la sentencia aquí impugnada. Mediante dicho dictamen, el tribunal a quo declaró con lugar la sentencia declaratoria presentada por HIMA en la reconvención. En específico dispuso que Telehealth no podía renovar unilateralmente los contratos de concesión y; además, que el contrato entre la primera y HIMA de Fajardo quedaría resuelto el 1 de junio de 2008 y el de HIMA de Bayamón el 1 de julio de 2008.
Inconforme, Telehealth recurrió nuevamente ante este foro en recurso de apelación, donde señala la comisión de varios errores alegadamente cometidos:

“1) Erró el Tribunal de Instancia al relacionar una serie de determinaciones de hechos como hechos por el Tribunal de Circuito de Apelaciones en su sentencia del 17 de noviembre de 2006, lo que no es correcto. Dicha sentencia no dispuso de determinaciones de hechos' como señalado por el Tribunal de Instancia.

2) Erró el Tribunal de Instancia al determinar que la resolución del 4 de marzo de 2008, advino final y firme.

3) Erró el Tribunal de Instancia al permitir enmendar la reconvención de la parte demandada, lo que constituye una alteración y/o variación de la sentencia del 17 de noviembre de 2006, dictada por el Tribunal de Circuito de Apelaciones.

4) Erró el Tribunal de Instancia al permitir el desistimiento sin perjuicio de la reconvención contrario a lo resuelto por el Tribunal de Circuito de Apelaciones [sic] por falta de jurisdicción sobre la materia.

5) Erró el Tribunal de Instancia al interpretar una cláusula de un contrato cuando lo que se pide es una 
*956
enmienda a las alegaciones violando así el debido procedimiento de ley.

6) Erró el Tribunal de Instancia al concluir que permitir el desistimiento sin perjuicio porque la parte demandante no compareció a oponerse.

7) Erró el Tribunal de Primera Instancia al resolver que Telehealth no podía hacer uso de la opción de dos años porque tenía que ser por mutuo acuerdo sin celebrar una vista para determinar la verdadera intención de las partes y contrario a la letra y todos los documentos preparatorios y admisiones de los propios abogados de la parte demandada. Habiendo una controversia sustancial de intención y propósito, no procede la solicitud de sentencia sumaria. ”

Procedemos a resolver las controversias presentadas. Discutiremos los errores 2, 3 y 5 en conjunto y de la misma forma el 4 y el 6, por éstos estar íntimamente relacionados. Por último, trataremos el señalamiento de error número 7.
II
Debemos señalar que el primer error planteado no es uno de gran importancia, por lo que no debe ser objeto de extensa discusión. Éste versa sobre unas determinaciones de hechos que según el TPI fueron realizadas por el Tribunal de Apelaciones en su sentencia del 17 de noviembre de 2006. Le asiste la razón.
De la lectura de la sentencia dictada por el panel hermano de este Tribunal se desprende que no se realizaron dichas determinaciones. Sin embargo, este error no tiene relevancia alguna, ni altera el resultado del dictamen, ya que del expediente surge que las determinaciones allí plasmadas son correctas, aunque no las haya pronunciado el Tribunal de Apelaciones en aquel entonces.
III
Los errores número 2, 3 y 5 versan sobre lo resuelto por el TPI en la Resolución del 4 de marzo de 2008.
Resulta innecesario que nos expresemos en relación al error número 2. A pesar de que fue errada la expresión que hiciera el TPI en cuanto a que dicha resolución advino final y firme, esto no tiene efecto o consecuencia alguna. En otras palabras, lo allí manifestado no alteró ni cambió la decisión de dicho foro.
Los errores 3 y 5 versan sobre la autorización concedida por el TPI para enmendar la reconvención presentada por HIMA. Exponemos el derecho aplicable.
Como se sabe, nuestras Reglas de Procedimiento Civil regulan las alegaciones permitidas en un pleito, a saber, demanda y su contestación; una reconvención y su respectiva réplica; la demanda contra coparte y una contestación a la misma y la demanda contra tercero y su contestación. Regla 5.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. Ill, R. 5.1.
La alegación que aquí nos compete es la llamada reconvención y éstas pueden ser compulsorias o permisibles. Las alegaciones compulsorias son aquéllas que la parte demandada viene obligada a formular, al momento de la contestación de la demanda, por éstas surgen de la acción, omisión o evento que motivó la reclamación del demandante. De no formularse la reconvención compulsoria, la parte renuncia a su causa de acción, por lo que los hechos y reclamaciones quedarán adjudicados. En este caso, el demandado quedará impedido de presentar posteriormente una reclamación sobre los asuntos referentes a los mismos eventos que motivó la acción original, por ser de aplicación la figura jurídica de la cosa juzgada. Regla 11.1 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. Ill, R. 11.1; Ñeca Mortg. Corp. v. A&W Dev. S.E., 137 D.P.R. 860, 866-867 (1995); J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones JTS, 2000, T.I, pág. 288.
*957 En cambio, las reconvenciones permisibles son las que se podrán interponer contra la parte adversa aunque éstas no surjan del acto, omisión o evento que motivó la acción incoada por el demandante. Regla 11.2 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. Ill, R. 11.2.
A pesar de que las Reglas de Procedimiento Civil imponen la presentación oportuna de la reconvención, ésta no es una norma absoluta ni de aplicación categórica. Dicha compilación de normas procesales establece varias excepciones a la regla general, a saber:
“Una reclamación propia para ser alegada por reconvención cuya exigibilidad advenga después de la parte haber notificado su alegación, podrá ser deducida por vía de reconvención mediante alegación suplementaria, con el permiso del tribunal. Regla 11.5 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 11.5.
Cuando la parte que hace una alegación deja de formular una reconvención por descuido, inadvertencia o negligencia excusable, o cuando así lo requiera la justicia, dicha parte podrá, con el permiso del tribunal, formular la reconvención mediante enmienda. ” Regla 11.6 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. Ill, R. 11.6.
La jurisprudencia se ha expresado en relación a la reconvención por alegación suplementaria. En Ñeca Mort. Corp. v. A&W Dev. S.E, supra, se dispuso que mediante esta figura jurídica la parte demandada puede presentar su reconvención cuando los hechos que dan lugar a ésta ocurrieron después que la demandada ha formulado su contestación a la demanda. Para que la parte pueda formular este tipo de alegación se necesita solicitar permiso al tribunal. Se indicó que el propósito de esta regla es ponér al día el litigio mediante la adición de alegaciones respecto a hechos ocurridos con posterioridad a la alegación que se pretende suplementar.
En cuanto a las reconvenciones omitidas, el Dr. Cuevas Segarra expresó que el propósito de la regla es mitigar el efecto que produce la omisión de incluir una reconvención compulsoria. Añadió que el foro adjudicador debe aplicar la norma de la Regla 11.6 de Procedimiento Civil, supra, de forma liberal. Consecuentemente, se debe autorizar la presentación de una reconvención a destiempo cuando la solicitud de la parte demandada se ha presentado con prontitud y no exista incuria, mala fe, perjuicio indebido al promovido o la existencia de motivaciones dilatorias por parte del promovente. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, supra, a las págs. 298-299.
Según lo expresado en los hechos, HIMA solicitó autorización para enmendar la reconvención originalmente presentada y así poder adaptarla a la nueva controversia entre las partes. Específicamente, solicitó añadir el cuestionamiento de si Telehealth podía unilateralmente renovar o no ejercer la prórroga provista en ambos contratos.
Por su parte, Telehealth adujo que dicha alegación tenía que ser formulada al momento de ésta contestar la demanda, por constituir una reconvención compulsoria. Además, indicó que la decisión del TPI alteró y varió la sentencia dictada -el 17 de noviembre de 2006- por este foro apelativo. No tiene la razón.
No cabe la menor duda que la alegación que HIMA pretende incluir, mediante enmienda, en la reconvención, es una compulsoria. Sin embrago, al examinar la norma antes citada y los hechos del caso, vemos que le es de aplicación tanto la Regla 11.5 como la 11.6 de Procedimiento Civil, supra.
Se desprende con meridiana claridad que la alegación o cuestionamiento propuesto por HIMA surgió como consecuencia de lo resuelto por este Tribunal en el primer recurso incoado por Telehealth. Por lo tanto, no fue hasta ese momento que sobrevino la controversia sobre el término de vigencia de los contratos y cuál era la parte con potestad de ejercer la prórroga allí dispuesta.
*958 La peculiaridad de la situación de autos nos mueve a resolver que como al momento de la contestación a la demanda no había germinado la controversia actual, HIMA no venía obligada a presentarlo en la reconvención original. Sólo en este momento es que HIMA se encontraba en posición de poder reclamar, argumentar y defenderse sobre este nuevo problema.
Ante esta situación, concluimos que el TPI procedió correctamente en el ejercicio de su discreción, al permitir la enmienda a la reconvención.
Es de señalar que la actuación del TPI bajo ningún concepto afectó a Telehealth. Surge del expediente que la solicitud fue presentada con prontitud, una vez este Tribunal resuelve que HIMA asumió los contratos habidos entre UHS y Telehealth y cuando este último pretendió ejercer la prorroga de forma unilateral. Por lo tanto, no hubo incuria, mala fe, perjuicio indebido al promovido o la existencia de motivaciones dilatorias por parte del promovente.
Acoger los planteamientos de Telehealth y en consecuencia impedir que se enmiende la reconvención no sólo estaría en contravención con nuestro estado de derecho, sino que frustraría el deber de hacer justicia, norte de nuestro sistema judicial. Consecuentemente, resolver en contrario causaría indebida indefensión de una de las partes (HIMA) en el litigio ante las nuevas circunstancias y controversias que surgieron en el transcurso procesal de la causa de epígrafe.
Además, es incorrecto señalar que la decisión de instancia vaya en contravención con el primer dictamen al que este Tribunal arribara originalmente. Como indicamos, nuestro panel hermano sólo resolvió que en los contratos no existía cláusulas resolutorias unilaterales, por lo que HIMA no podía realizar dicha acción antes del término dispuesto para su vencimiento. Bajo ningún concepto se puede entender que este foro resolvió cuál era el término de vigencia de los contratos en cuestión ni quién tenía la potestad o el derecho de ejercer la prórroga de dos años que éstos establecían, que es la controversia actual. En consecuencia, la determinación arribada por el TPI, en su resolución del 4 de marzo de 2008, no alteró ni varió lo originalmente resuelto por el Tribunal de Apelaciones.
Tampoco es correcto que el TPI prejuzgara la controversia al interpretar preliminarmente las cláusulas decimosextas de los contratos que determinan los términos de vigencia de ambos contratos. A claras luces se desprende que las expresiones vertidas por el TPI en cuanto a las referidas cláusulas fueron a los únicos efectos de poder determinar si se justificaba o no la enmienda a la reconvención que solicitó HIMA. Por lo tanto, el TPI no erró ni abusó de su discreción al permitir la enmienda a la reconvención.
IV
Los errores número 4 y 6 tampoco podrán ser resueltos por carecer de jurisdicción.
Nos percatamos que mediante este recurso, Telehealth pretende revisar la sentencia parcial del 12 de mayo de 2008, la cual fue notificada el 20 de mayo de 2008.
Sabido es que nuestras Reglas de Procedimiento Civil otorgan a la parte perjudicada por una sentencia final varios mecanismos o procedimientos postsentencia. En lo aquí concerniente, se encuentran la moción de reconsideración y el recurso de apelación ante el Tribunal de Apelaciones.
Es norma trillada que ambos mecanismos cuentan con términos jurisdiccionales cuyo incumplimiento privan de autoridad a los foros correspondientes de entrar a considerarlos.
La Regla 47, supra, indica que las partes interesadas cuentan con 15 días contados a partir del archivo en autos de copia de la notificación de la sentencia para solicitar ante el TPI la reconsideración. En cambio, para el *959 recurso de apelación, las reglas precisaron un término de 30 días desde ese mismo trámite administrativo. Regla 53.1(c) de Procedimiento Civil, 31 L.P.R.A. Ap. Ill, R. 53.1 (c).
En el caso de la reconsideración, si la parte presenta oportunamente dicha moción, el TPI cuenta con 10 días desde su presentación para considerarla. Si el TPI la rechazara de plano, el término prescrito para presentar el recurso de apelaciones no habrá sido interrumpido. Por el contrario, si se tomara alguna determinación en su consideración, dicho término comenzará nuevamente a transcurrir desde la fecha en que se archiva en autos una copia de la notificación de la decisión del tribunal que resuelve la moción.
Como indicamos, Telehealth no solicitó reconsideración ni recurrió en alzada ante este foro de la sentencia parcial archivada en autos el 20 de mayo de 2008. Todo lo contrario, optó por presentar una moción de relevo al amparo de la Regla 49.2, supra. Esta solicitud, aunque presentada oportunamente, no tuvo efecto alguno en los procesos postsentencia a seguir.
Ante el hecho de que la presentación de la moción de relevo no interrumpe el término para presentar reconsideración ni el recurso de apelación, Telehealth dejó vencer tanto el término de 15 días para el primer procedimiento postsentencia y los 30 días para la apelación. En consecuencia, desde el 20 de mayo de 2008, los términos comenzaron a transcurrir, venciéndose así, el 4 de junio de 2008, la oportunidad de solicitar reconsideración y el 19 de junio del mismo año el derecho a apelar. Ante la impugnación tardía del dictamen, este Tribunal carece de autoridad para dilucidar errores en cuanto a una sentencia que advino final y firme, por no haber sido recurrida oportunamente.
Añadimos, sólo para objeto de análisis, que aunque consideremos la moción de relevo como una de reconsidéración, ello no cambiaría ni alteraría la decisión a la que hoy arribamos.
Ante el hecho incontrovertible de que el TPI no se expresó en cuanto a dicha solicitud, la misma se entendería rechazada de plano por lo que el término de 30 días para apelar no se interrumpió y venció el 19 de junio de 2008. La inacción de Telehealth provocó que la sentencia parcial adviniera final y firme, lo que nos priva de poder intervenir.
y
En Puerto Rico, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia, teniendo las obligaciones que nacen de los contratos fuerza de ley. Artículo 1042 y 1044 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2992, 2994.
Como se sabe, nuestro estado de derecho le reconoce a las partes contratantes libertad de contratación, por lo que pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre y cuando éstas no contravengan las leyes, la moral ni el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. see. 3372.
Es por todos conocido que la norma respecto a la interpretación de los contratos tiene su génesis en nuestro Código Civil. Esta es clara y categórica, a saber:

“Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.” Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3471.
Conforme a dicha disposición, se ha resuelto que si los términos del contrato son claros y no dejan duda alguna sobre la intención de los contratantes, el foro adjudicador no debe recurrir a las reglas de interpretación. *960 Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 517 (1998).
Entre todos los negocios jurídicos reconocidos por nuestro estado de derecho, se encuentra el contrato de opción.
Aunque en el Código Civil de Puerto Rico no está regulada la figura jurídica del contrato de opción a compra, la misma ha sido reconocida en nuestra jurisdicción. S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001). Como se sabe, el contrato de opción es uno de carácter consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo de decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. íd.\ Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796 (1975).
Los elementos esenciales del contrato de opción son los siguientes: (1) se le concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y (4) no existe otra condición que la voluntad del optante. S.L.G. Irizarry v. S.L.G. García, supra.
De los anteriores elementos se puede colegir que, a pesar de ser un contrato consensual, la opción de comprar es unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquél así lo decide. Rosa Valentín v. Vázquez. Lozada, supra, a la pág. 810.
En el caso de autos, Telehealth señaló en su último planteamiento que instancia erró al resolver que éste no podía hacer uso de la opción de 2 años porque dicha decisión tenía que ser por mutuo acuerdo. Añadió que el TPI erró al así decidir sin haber celebrado vista para dilucidar la intención de las partes al momento de contratar. Además, adujo que ante la existencia de una controversia sustancial de intención no procedía dictar sentencia sumaria. Apliquemos la norma a estos hechos particulares.
Antes de entrar de lleno a los acuerdos aquí pertinentes, debemos indicar que de un examen a los contratos en controversia nos percatamos que sus términos son claros, por lo que no dejan duda de la intención de las partes contratantes. Por consiguiente, éste se tiene que interpretar al sentido literal de sus cláusulas. Dicho esto, pasemos a citar y analizar las cláusulas aquí en disputa.
En cuanto al Contrato Servicio de Televisores entre Telehealth y el Hospital San Pablo del Este, la misma reza como sigue:
“Decimosexto: El presente contrato tendrá un término de cinco (5) años a partir del 1 de junio de 2003 con excepción de las nuevas tarifas negociadas en este contrato las cuales aplicarán para efectos del primer año y anualmente sucesivamente retroactivo Ier" de mayo de 2003. Este contrato provee tarifas para los dos (2) años adicionales en caso de que el CONCEDENTE ejecute la opción de renovar de los dos (2) años adicionales de contrato con por lo menos seis (6) meses antes de finalizar el quinto (5"j año. De ejecutarse la opción de renovación de los dos (2) años adicionales, seis (6) meses antes de finalizar el último año de la opción de renovación, las partes se reunirán para negociar la renovación del mismo. ” [1] (Énfasis nuestro)
La cláusula en controversia en el Contrato Servicio de Televisores entre Telehealth y el Hospital San Pablo de Bayamón, lee como sigue:
“DECIMOSEXTO: El presente contrato tendrá un término de cinco (5) años a partir del Tr" de j¿dio de 2003 con una renovación de dos (2) años adicionales de contrato por mutuo acuerdo. Seis (6) meses antes de finalizar el último año de este contrato, las partes se reunirán para negociar la renovación del mismo. ” [2] (Énfasis nuestro)
*961 Del cuerpo total de los contratos y de las disposiciones antes transcritas se desprende que ninguno de éstos contienen una cláusula de opción. Cuando evaluamos dichas estipulaciones con la norma erigida para los contratos de opción, nos percatamos que éstas no cumplen con. los requisitos para que se constituyera dicho negocio jurídico. Veamos.
En primer lugar, HIMA no le concedió a Telehealth la facultad exclusiva de decidir unilateralmente sobre la prórroga establecida en los contratos por la vía del contrato de opción, ni viceversa. En otras palabras, no existe parte optante y promitente, ya que ambas cláusulas decimosextas sólo indican que 6 meses antes de finalizar el último año del contrato las partes se reunirán para negociar la renovación. Por lo tanto, surge claramente que la ejecución no depende de la decisión exclusiva de Telehealth como optante. La obligación entre los aquí litigantes no guarda relación alguna con el contrato de opción.
En ambas cláusulas sólo se acordó un período de tiempo para que cualquiera de las partes solicitara una reunión a la otra parte para sentarse a negociar con el propósito de explorar de buena fe la posibilidad de arribar a un nuevo contrato. La prorroga de 2 años estaba sujeta a que en efecto se acordare un nuevo contrato.
Ante todo lo anterior, no albergamos duda alguna que las partes no acordaron una cláusula de opción para la prorroga de 2 años. Por lo tanto, ninguna de las partes de epígrafe tiene autoridad para decidir unilateralmente si renuevan o no los contratos en controversia.
Cónsono con lo anterior, resolvemos que no erró el TPI al determinar que la extensión de los dos años bajo el contrato entre el Hospital San Pablo de Bayamón y Telehealth requería del mutuo acuerdo de las partes, obviamente, luego de la negociación'correspondiente. No obstante, no concurrimos en que en el contrato entre el Hospital San Pablo de Fajardo y Telehealth, el primero era el que tenía la autoridad exclusiva para renovarlo. Sin embargo, ello no varía el resultado al que llegó el TPI y estamos contestes con su dictamen. En otras palabras, fue correcta la determinación del TPI en cuanto a que Telehealth no podía optar por renovar unilateralmente los contratos en cuestión. [3]
La decisión a la que arribamos se debe a que a pesar de que no estamos ante una cláusula de opción, sí existía una obligación de negociar de buena fe con la intención de llegar a términos económicos y operacionales mutuamente aceptables para prorrogar el contrato por 2 años. [4] Aunque ello no implica que necesariamente las partes arriben al acuerdo, la doctrina sí requiere que lo intenten de buena fe y en un tiempo razonable.
Conforme lo antes explicado, la acción de Telehealth no se ajustó a lo acordado por las partes. El aquí apelante tenía que de buena fe solicitar y tratar de concertar, en el término allí dispuesto, una reunión con HIMA para discutir la posible renovación del contrato. No obstante, este no fue su proceder. Al notificar ex parte que ejercía la opción de prórroga por los 2 años, actuó fuera del ámbito contractual y dejó que transcurriera el término de 6 meses para solicitar la reunión para negociar, que disponía cada contrato.
Nuestras expresiones en cuanto al incumplimiento contractual por parte de Telehealth no descarta que HIMA también haya incumplido. De los documentos anejados, surge que HIMA, en efecto, incumplió con los acuerdos allí concretados. No obstante, al ser Telehealth la parte reclamante, éste venía obligado a probar ante el TPI que actuó adecuadamente en protección a su derecho contractual. Recordemos que nuestro derecho es uno rogado.
Pasemos ahora al planteamiento respecto al mecanismo utilizado para dictar sentencia.
Es de señalar que ante la claridad de las cláusulas contractuales, el TPI actuó correctamente al dictar sentencia sumaria y resolver a favor de HIMA la sentencia declaratoria, vía reconvención.
*962 Es norma conocida de derecho que una sentencia sumaria procede cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hay verdadera controversia real fáctica entre las partes. Regla 36.3 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 36.3; Hernández v. Bermúdez & Longo, S.E., 149 D.P.R. 543, 550 (1999). Del expediente surge que no existía controversia material de hecho, por lo que restaba aplicar el derecho.
Los documentos suplidos por Telehealth en su oposición a sentencia sumaria no contravinieron las alegaciones de HIMA. La carta del 13 de agosto de 2002 a la que alude el aquí compareciente ni su argumento de que el término del contrato era por siete años, por haberse estipulado los pagos para los dos años de la prórroga, pusieron en entredicho la clara intención de las partes plasmada en los contratos.
Por último, reiteramos que el dictamen aquí impugnado no contravino lo antes resuelto por este foro el 17 de noviembre de 2006.
Según lo antes articulado, en aquella ocasión, la controversia versaba sobre la potestad, si alguna, de HIMA para proceder a resolver unilateralmente los contratos con Telehealth, antes del vencimiento del término original pactado. Allí se resolvió que no existía cláusula resolutoria unilateral.
Por el contrario, la controversia actual trata sobre si Telehealth podía unilateralmente extender los contratos por dos años una vez venciera el término original de 5 años. Vemos que las controversias son disímiles y que la decisión tomada en un principio por este foro no predispuso ni adjudicó la actual. Por lo tanto, el dictamen de instancia, que hoy es confirmado por este Tribunal, tampoco altera, modifica o contraviene ni revoca la decisión del 17 de noviembre de 2006.
VI
Ante los fundamentos precedentes, confirmamos la sentencia emitida el 30 de junio de 2008, por el TPI.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Leda. María Elena Pérez Ortiz Secretaria Tribunal de Apelaciones
ESCOLIOS 2009 DTA 43

1. El contrato de servicio entre Telehealth y el Hospital San Pablo del Este denominó a este último como CONCEDENTE.

2. En este contrato, el Hospital San Pablo de Bayamón también fue denominado como CONCEDENTE.

3. Es aquí de recordar que la apelación se da contra la sentencia (dictamen) y no contra sus fundamentos. Díaz. Martínez v. Policía de P.R., 134 D.P.R. 144, 156-157 (1993).

4. No podemos perder de perspectiva que el norte en materia de contratos es la buena fe. Recientemente, nuestro Tribunal Supremo nuevamente se expresó en relación a este principio fundamental e indicó lo siguiente:

“Es importante destacar que la buena fe contractual no se manifiesta tan sólo al comienzo del contrato o en la fase negocial, sino que está presente mientras dure la relación contractual. Asimismo, las partes “deben adoptar un comportamiento leal en toda fase previa a la constitución de tales relaciones... [y] deben también comportarse lealmente en el desenvolvimiento de las relaciones jurídicas ya constituidas entre ellos. ” Diez-Picazo, Prólogo en Wieacker, El principio general de la buena fe, Editorial Civitas, Madrid, 1982, pág. 12.

*963 La buena fe, según señalamos en Producciones Tommy Muñiz v. COPAN, 113 D.P.R. 157 (1989), impone un arquetipo de conducta social que implica la carga de una lealtad recíproca de conducta valorable y exigible. En virtud de esta exigencia de lealtad, el contenido de la buena fe necesariamente rebasa "el mero actuar correctamente”, particularmente dentro del marco de la relación contractual. Por eso, la buena fe contractual no debe manifestarse tan sólo aj comienzo del contrato o en la fase negocial, sino mientras dure la relación y necesariamente será matizada por el comportamiento recíproco de las partes contratantes. Asimismo, en Colón v. Glamorous Nails & Boutique, Inc., et al., 2006 J.T.S. 25, entramos en el aspecto moral y ético de la buena fe y el carácter primordial en todas las etapas de la relación contractual y citamos a Puig Brutau para recalcar que esta relación “impone determinados deberes, en el sentido de estar las partes obligadas a comportarse con la buena fe necesaria y a observar la lealtad exigida por las convicciones éticas imperantes”. Puig Brutau, op. cit., pág. 216. Explicamos entonces que al establecer la buena fe como principio rector del ordenamiento jurídico se persigue, en palabras de Diez-Picazo, “que el desenvolvimiento de las relaciones jurídicas, el ejercicio de los derechos y el cumplimiento de las obligaciones, se produzca conforme a una serie de principios que la conciencia jurídica considera necesarios, aunque no hayan sido formulados. ” (Enfasis suplido.) Colón v. Glamorous Nails, supra, citando a Diez-Picazo, La Doctrina de los actos propios, Barcelona, 1963, pág. 157. Banco Popular de Puerto Rico v. Sucn. Talavera, res el 31 de julio de 2008, 174 D.P.R. _ (2008), 2008 J.T.S. 152.